## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**WILLIAM DAMON AVERY,**

        Plaintiff,

    **-vs-**               **Case No. 11-C-408**

**CITY OF MILWAUKEE, et al.,**

        Defendants.

## DECISION AND ORDER

William Damon Avery was convicted, but later exonerated, for the 1998 murder of Maryetta Griffin. In this civil rights suit, a nine-person jury found that Milwaukee police detectives Gilbert Hernandez and Daniel Phillips fabricated Avery's confession. The jury also concluded that Hernandez and Phillips conspired to fabricate and failed to intervene to prevent the use of Avery's confession as evidence to convict him. Finally, the jury found that the City of Milwaukee had a policy, practice, or custom of inadequately investigating homicides which led to Avery's conviction. The jury awarded one million dollars in damages.

Now before the Court is the defendants' motion to alter or amend the Court's judgment on this verdict. Fed. R. Civ. P. 59(e). They argue that Avery is barred from recovering on his due process claim as a matter of

law, that Avery's confession was not a proximate cause of his incarceration, and that the policy or practice claim must fail in the absence of a valid underlying claim against Phillips and Hernandez. The Court agrees with the first and third arguments. As a result, it is not necessary to reach the causation issue, but the Court will address it for the sake of a complete appellate record.

Also before the Court are fee petitions by Avery's attorneys. Since the judgment will be altered in favor of the defendants, Avery is no longer a prevailing party, so these motions must be denied.

For the reasons that follow, the defendants' motion to alter or amend the judgment is granted.

## I.    Background

In March of 1998, Avery was interviewed as a person of interest in relation to the Griffin murder. Avery ran a dope house that was frequented by prostitutes like Griffin. Phillips and Hernandez authored a report which stated that Avery told them he sold "dope" to Griffin and that after he had fallen asleep he was awakened by Griffin going through his pockets and pulling out his money; that he fought with Griffin; that he did not remember what happened but he told "Ronnie" that he thought he "killed this bitch;" and that he was responsible for the murder, but he did not

- 2 -

remember how he killed her. Defendant's Exhibit 1030. This evidence, in the view of Milwaukee Assistant District Attorney Mark Williams, was insufficient to bring homicide charges. Avery was found guilty on charges arising out of the activities surrounding his dope house operations and sent to prison.

Three years later in 2001, Keith Randolph, an Avery acquaintance who was serving time in the same prison as Avery, contacted the Milwaukee Police Department through his attorney and said he heard Avery tell him that he was involved in Griffin's homicide. Detective Timothy Heier went to the prison and took the inculpatory statement from Randolph. Once again, District Attorney Williams declined to bring homicide charges against Avery. In the meantime, Avery was transferred from Wisconsin to a prison in Oklahoma. On July 25, 2002, while Avery was in the Oklahoma prison, Milwaukee police detective Kevin Armbruster received an anonymous call from a prisoner in the same Oklahoma prison stating that he had information implicating Avery in the Griffin murder. The anonymous caller turned out to be Antron Kent who said that in conversations with Avery, Avery admitted killing Griffin. Another inmate, Jeffrey Kimbrough, said he heard those admissions. Based on these intersecting admissions by Avery, made to different people at different

- 3 -

times and at different locations, District Attorney Williams brought a homicide charge.

Phillips and Hernandez testified at Avery's criminal trial, in accordance with their 1998 report, that Avery confessed to being responsible for Griffin's murder. Kent, Kimbrough, and Randolph also testified for the prosecution. Avery was convicted of first degree reckless homicide, party to a crime, but because there was no DNA evidence linking Avery to the crime, and because there was DNA evidence from a serial killer named Walter Ellis discovered on the body of Griffin, Avery was released in 2010.

Avery's release resulted in this lawsuit. Avery and his children sued the City of Milwaukee and seven police detectives: Hernandez, Phillips, Heier, Katherine Hein (n/k/a Spano), Armbruster, Eric Gulbrandson, and James DeValkenaere. After lengthy pre-trial litigation, Avery's suit survived summary judgment on his claim that the defendants "violated his clearly established due process rights by creating false written reports that he confessed, knowing that he had not, and also by manufacturing false testimony from jailhouse informants in order to corroborate the fabricated confession." 40 F. Supp. 2d 1089, 1094-95 (E.D. Wis. 2014). The Court granted the defendants' motion for summary judgment on Avery's claim

- 4 -

that the defendants violated due process "by not disclosing the fact that they coached and manipulated the jailhouse informants into falsely implicating him in the Griffin murder." *Id.* at 1096. The latter claim arose under *Brady v. Maryland*, 373 U.S. 83 (1963), a "due process case that entitles criminal defendants to be shown any exculpatory evidence … in the possession of prosecutors, … ." *Id.* (quoting *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003)).

Before trial, the parties stipulated to the dismissal of Avery's state law claims and all of his claims against Detective Gulbrandson. ECF Nos. 126, 127. Also before trial, the Court dismissed the loss of companionship claims brought by Avery's children. ECF No. 116. Thus, Avery's case went to trial on the aforementioned due process claim against Phillips, Hernandez, Hein (Spano), Heier, Armbruster, DeValkenaere, and the City of Milwaukee.

Defendants argue, given the verdict and Avery's testimony, that the jury's finding of fabrication is limited to Avery's confession. The Court agrees with this characterization of the evidence and the verdict. So does Avery. ECF No. 153, at 6 ("Plaintiff's fabrication claim against Defendants Hernandez and Phillips was based on the March 24, 1998 police report authored by Hernandez, …").

- 5 -

## II.    Analysis

Motions under Rule 59(e) serve the limited function of allowing a court to correct manifest errors of law or consider newly discovered material evidence. *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006). Rule 59(e) is the correct vehicle for the defendants' first and third arguments – that Avery's due process claim fails as a matter of law, and that Avery's *Monell* claim collapses in the absence of a valid underlying claim. Neither argument asks the Court to consider whether the jury had a "legally sufficient *evidentiary basis*" to find for Avery on these issues. Fed. R. Civ. P. 50(a), (b) (Judgment as a Matter of Law in a Jury Trial) (emphasis added). Defendants' causation argument will be considered under Rule 50(b). *See Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998) ("The motion was filed within the time limit for a 50(b) motion (which is the same as that for a 59(e) motion …) and it contained the information required for a 50(b) motion. That was good enough; captions do not control").

### A.    Due process

At summary judgment, the Court found that Avery's due process claim was viable pursuant to cases such as *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) and *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir.

- 6 -

2014) ("*Fields II*"). In *Whitlock*, for example, the Seventh Circuit explained that it has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." 682 F.3d at 580; *see also Fields II*, 740 F.3d at 1114 ("it was established law by 1985 (indeed long before) … that a government lawyer's fabricating evidence against a criminal defendant was a violation of due process"). The Court rejected the argument that Avery's fabrication claim amounts to a claim for malicious prosecution, which is "knock[ed] out" by the "existence of a tort claim under state law." 40 F. Supp. 3d at 1095 (quoting *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)). "Perhaps it used to, *see, e.g., McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003), but no longer in light of *Whitlock* and *Fields II*." *Id.*

Since that ruling, the Seventh Circuit has issued two decisions discussing *Whitlock* and *Fields II* in relation to cases such as *Newsome* and *McCann*. First, the court explained that the *Newsome-McCann* line of cases does not stand for the proposition that "fabricating evidence does not violate a defendant's due process, actionable pursuant to § 1983. Instead, they merely establish that allegations that sound in malicious prosecution must be brought pursuant to state law. To the extent that these decisions

may have rendered the law in this area uncertain, our more recent decisions have been explicit." *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015) (citing and discussing *Whitlock*, *Fields II*, and *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014)). Thus, the district court erred by "categorically" holding that "a claim of evidence fabrication cannot form the basis of a due process claim under § 1983 and must instead be brought as a state law malicious prosecution claim." *Id.* (emphasis in original).

Second, the court explained that "[r]ecent cases in this circuit hold that a *prosecutor* who fabricates evidence against a suspect and later uses that evidence to convict him violates due process, and this due-process right was clearly established by at least the early 1980s." *Stinson v. Gauger*, --- F.3d ----, 2015 WL 5011961, at \*7 (7th Cir. Aug. 25, 2015) (citing *Fields II* and *Whitlock*) (emphasis added). Such a constitutional violation "occurs when the evidence is fabricated, not when the fabricated evidence is later introduced at trial – a crucial distinction because the prosecutor would have absolute immunity for any constitutional violation committed during the trial." *Id.* The court continued:

> *It's not entirely clear that the same reasoning applies to police officers and expert witnesses who are alleged to have fabricated evidence during an investigation.* Unlike prosecutors, police investigators face liability for failing to disclose their own fabrication of evidence. That's because immunity doesn't

- 8 -

protect an officer who fails to disclose material exculpatory evidence as required by *Brady*, even though a prosecutor who did the same thing would have absolute immunity for the suppression, … .

*Moreover, a line of cases in this circuit has squarely held that a police officer's fabrication of evidence (as distinct from his suppression of material exculpatory evidence) is not actionable as a violation of due process as long as state law provides an adequate remedy for the fabrication – usually in the form of a malicious-prosecution tort action.* Under these cases due process is satisfied as long as the state permits a suit against the culpable officer after the fact. *Whitlock* did not address this line of cases. If they remain good law, then the due-process claim against prosecutors recognized in *Whitlock* and applied in *Fields II might not be available against police officers … unless state law lacks an adequate tort remedy for the fabrication of evidence.*

2015 WL 5011961, at \*8 (emphases added) (internal citations omitted).

Accordingly, there are mixed signals coming from the Seventh Circuit regarding the viability of due-process fabrication claims against police officers. *Whitlock* baldly states that "a *police officer* who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." 682 F.3d at 580 (emphasis added). *Stinson*, however, draws out the distinction between prosecutors and police officers and suggests, but does not hold, that a due process claim cannot be maintained against the latter as opposed to the former. *Stinson*, 2015 WL 5011961, at \*8 ("We

- 9 -

don't need to resolve this question, however, because Stinson's claims fail even assuming *Whitlock* and *Fields II* apply to state actors other than prosecutors").

The Court is now persuaded, in the wake of *Stinson* and *Saunders-El*, that Avery's due process claim is governed by *Newsome-McCann*, not *Whitlock-Fields II*. The former line of cases, as *Stinson* makes clear, has not been overruled. What matters then is whether Avery's claim "sounds" in malicious prosecution, *Saunders-El*, 778 F.3d at 560, and whether there is an available remedy under Wisconsin law. It does and there is. *See* Amended Complaint, ¶¶ 54-55 (alleging that the defendants fabricated evidence "thereby misleading and misdirecting the criminal prosecution" which "directly resulted" in an "unjust criminal conviction"); *Strid v. Converse*, 331 N.W. 2d 350, 353-54 (Wis. 1983) (listing elements of claim for malicious prosecution). Therefore, Avery is not entitled to relief on his due process claim. *Saunders-El* at 561; *McCann*, 337 F.3d at 786 (plaintiff's claim that defendant denied him due process by "causing him to suffer '[a] deprivation of liberty from a prosecution and a contrived conviction … deliberately obtained from the use of false evidence,' … is, in essence, one for malicious prosecution, rather than a due process violation"); *Newsome*, 256 F.3d at 750 ("the existence of a tort claim under state law knocks out

- 10 -

any constitutional theory of malicious prosecution"); *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (claim that the defendants violated due process when they "deliberately fabricated false statements and deliberately obstructed justice, thereby causing the false arrest of [plaintiff], causing him to be falsely imprisoned [and] prosecuted" was "nothing more than a hybrid of [plaintiff's] Fourth Amendment false arrest and state law malicious prosecution claims, and accordingly, the due process claim is barred"); *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009) (claim that "criminal proceedings were instituted … based on false evidence or testimony" is "one for malicious prosecution, rather than a due process violation").[1]

Moreover, Avery's claims against Phillips and Hernandez are "factually distinct" from the claims in *Whitlock* and *Fields II*, as was the case in *Munoz v. Rivera*, No. 14 C 6794, 2015 WL 3896917, at *2 (N.D. Ill. June 23, 2015). In *Munoz*, the plaintiff claimed that a police officer and two police detectives fabricated evidence that twice led to jury convictions for the murder of his girlfriend. Unlike in *Whitlock*, *Fields II*, and *Petty*, the plaintiff alleged "neither manufactured physical evidence nor the

---

[1] Avery brought a state law claim for malicious prosecution, but he stipulated to its dismissal *with prejudice* before trial. That course of action, it would seem, was a mistake.

'concoction' of a false story fed to a witness by law enforcement." 2015 WL 3896917, at \*3. Remember, as relevant here, that the jury did *not* find that either Hernandez or Phillips were responsible for fabricating or "feeding a story" to Randolph, Kimbrough, or Kent. In addition, the contents of the alleged "false reports" in *Munoz* were "*the very facts defendants testified to during plaintiff's trials. Yet, defendants are absolutely immune from § 1983 damages claims based on their testimony.*" *Id.* (emphasis added). The same reasoning applies here because Hernandez and Phillips testified in accordance with their 1998 report: in short, that Avery confessed to killing Maryetta Griffin. Thus, even if Avery's due process claim was actionable, Hernandez and Phillips would be entitled to absolute immunity. *See Briscoe v. LaHue*, 460 U.S. 325 (1983) (police officers, like other witnesses, are entitled to absolute immunity from civil damages suits for testimony provided in judicial proceedings).[2]

## B. Causation

Under Rule 50(b), a party that filed a Rule 50(a) motion before submission to the jury can renew that motion within 28 days after the

---

[2] Likely recognizing this immunity, Avery is careful to state that the premise for his claim is the police report. Once again, such a claim is a malicious prosecution claim, not a due process claim. *Munoz*, 2015 WL 3896917, at \*4 ("to the extent plaintiff claims that defendants' false reports *led to the initiation of his criminal proceedings without probable cause*, his allegations appear to state the elements of Illinois' law of malicious prosecution …") (emphasis added).

- 12 -

entry of judgment on the verdict. Relief may be granted if "a reasonable jury would not have a legally sufficient basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The Court construes the evidence strictly in favor of the prevailing party and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence. *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012).

Section 1983 imposes liability on every official who "subjects, *or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). This provision is "read against the background of tort liability." *Monroe v. Pape*, 365 U.S. 167, 187 (1961). Causation is a standard element of tort liability, and it includes two requirements: (1) "cause-in-fact," i.e., "the injury would not have occurred absent the conduct;" and (2) "proximate cause," or "legal cause," *i.e.*, "the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 640 n.1 (7th Cir. 2008).

"The actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of

- 13 -

the due process violation." *Whitlock* at 583. However, the so-called "causal chain" can be broken by an intervening or superseding cause. "A superseding cause is something culpable that intervenes …, some action of a third party that makes the plaintiff's injury an unforeseeable consequence of the defendant's negligence." *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002). At the same time, "there is no rule demanding that every case have only one proximate cause. To the contrary, 'multiple proximate causes are often present' and 'an actor's tortious conduct need not be close in space or time to the plaintiff's harm to be a proximate cause.'" *Whitlock* at 583 (quoting Rest. 3d Torts § 29 cmt. B).

Defendants focus on the fact that Avery wasn't charged until Randolph, Kent, and Kimbrough came forward and implicated Avery in the Griffin murder. Thus, the defendants argue – keeping in mind that the jury did not find that either Hernandez or Phillips were responsible for feeding a fabricated story to Randolph, Kent, or Kimbrough – that the evidence offered by those individuals implicating Avery broke the causal chain between Avery's confession and his conviction. To the contrary, what matters is whether Avery's *conviction* was foreseeable. The jury could have found as such despite the subsequent evidence offered by these witnesses

- 14 -

which independently implicated Avery. If there are competing reasonable inferences to be drawn from the evidence, it is not the Court's role to substitute one reasonable inference for another reasonable inference drawn by the jury. Based on the evidence presented, the jury could and did draw reasonable inferences from that evidence to conclude that Avery's conviction was a foreseeable consequence of fabricating a confession.

## C.   *Monell* **claim**

To determine whether the City of Milwaukee's liability is dependent on its officers, the Court must look to "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009 (citing *Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)). Avery's theory of municipal liability is that the City had a policy or practice to not adequately investigate homicides, and as a result, the defendants fabricated evidence against Avery to convict him. The jury found that five of the defendants did not fabricate evidence, and as to the other two, the Court has now concluded that Avery has no actionable due process claim as a matter of law. The jury was not instructed on any affirmative defenses. Therefore, the judgment must be altered in favor of the City because Avery's constitutional rights were not violated. *Thomas*, 604 F.3d at 304-05

- 15 -

(discussing *Heller*) ("Without any affirmative defenses, a verdict in favor of the officer necessarily meant that the jury did not believe the officer violated the plaintiff's constitutional right. And since the City's liability was based on the officer's actions, it too was entitled to a verdict in its favor"); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012) ("Here, there was no constitutional violation, therefore no municipal liability").

**\*\*\***

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the defendants' motion to alter or amend the judgment [ECF No. 146] is **GRANTED**. The motions for attorney's fees [ECF Nos. 148, 152] are **DENIED**. The Clerk of Court is directed to amend the judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2015.

BY THE COURT:

_____

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**